UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALBERTO VERA JIMENEZ,**<br><br>　　　　　　　　　　　Plaintiff,<br>　v.<br>**R. SAMBRANO, et al.,**<br><br>　　　　　　　　　　　Defendants. | CASE NO. 04cv1833 L (PCL)<br><br>**REPORT & RECOMMENDATION RE GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

### I. INTRODUCTION

On October 26, 2005, Alberto Vera Jimenez ("Plaintiff"), an inmate currently incarcerated at R.J. Donovan Correctional Facility, filed a First Amended Complaint ("FAC") against correctional officers R. Sambrano, A. Alvardo, and E. Delgado ("Defendants").[1]  (Doc. No. 4.)  After a Motion to Dismiss by Defendants, (Doc. No. 15), two claims remain.  (Doc. No. 51.)  The FAC alleges Defendants used excessive force in violation of the Eighth Amendment and retaliated against Plaintiff in violation of the First Amendment.  (Doc. No. 4.)  This matter is before the Court on Defendants' Motion for Summary Judgment.  (Doc. No. 126.)  The Court will also consider Plaintiff's "Motion for Judgment as a Matter of Law." (Doc. No. 128.)

///

---

[1] The complaint also named warden S. Ryan as a defendant; however, he was dismissed from the FAC following Defendants' Motion to Dismiss.  (See Doc. No. 51.)

## II.  BACKGROUND

In his order on March 30, 2006, Judge Lorenz distilled the case to its essential facts:

> Plaintiff alleges that at approximately 2:30 p.m. on July 18, 2004 Correctional Officers R. Sambrano and A. Alvarado stood in front of his cell and ordered him to exit. (FAC at 3.) Plaintiff contends he refused to do as he was ordered and requested to speak to a ranking officer because he felt that Sambrano was retaliating against Plaintiff for having made verbal reports of Sambrano's misconduct. (Id.)
>
> Alvarado and Sambrano denied Plaintiff's request to speak to a ranking officer and charged into Plaintiff's cell and attacked him. (Id.) Plaintiff contends Sambrano hit Plaintiff in the face, leaving a 1 ½ inch laceration above Plaintiff's left eyebrow. (Id.) Plaintiff states his nose was fractured and he was bruised all over his body. (Id.; FAC ex. A.) A videotape was taken of Plaintiff's injuries. (Id. at 3.)
>
> Plaintiff contends that at the time of the attack, Sambrano was aware that Plaintiff had recently undergone a corneal transplant in his right eye, but nevertheless excessively and continuously sprayed Plaintiff's eyes with "MK-9 oleoresin copsicum." (Id. at 4.) Plaintiff alleges that as a result, the vision in his right eye has deteriorated and he has been suffering migraine headaches and blurry vision. (Id.)

(Doc. No. 51 at 2-3.)

Defendants counter that the cell search was a routine random inspection. (Doc. No. 126 P. & A. at 3.) Defendants allege that Plaintiff was drunk on "pruno", an inmate manufactured alcohol, and when the Defendants ordered him to handcuff himself, he refused, retorting, "I ain't coming out. You want me out, you step in and get me, you fucking bitch." (Id. at 2-3.) Defendants further allege Plaintiff threw an electric kettle at Sambrano and fought Defendants as they removed him from his cell. (Id. at 3.) Defendants admit Alvarado struck Plaintiff with a baton, but argue they used minimal force and solely to ensure their safety and the prison's security. (Id. at 4.)

## III. STANDARD - RULE 56

Summary judgment is appropriate when it is demonstrated that there exists no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the moving party shows an absence of evidence to support the non-moving party's claims, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "A material issue of fact is

one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-1306 (9th Cir. 1982).

To successfully rebut a properly supported summary judgment motion, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inference made in the plaintiff[ ]'s favor, could convince a reasonable jury to find for the plaintiff[ ]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon allegations or denials but is required to tender evidence of specific facts. See Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586 n. 11.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed.R.Civ.P. 56(c).  The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 225.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.C. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Frieght Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985).

The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587; see Scott v. Harris, ___ U.S. ___; 127 S.Ct. 1769, 1776 (2007).  In other words, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 127 S.Ct. at 1776.

### IV.  RETALIATION

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) harmed the prisoner and (5) was not narrowly tailored to advance a legitimate correctional goal." Rhodes v. Robinson, 380 F.3d 1123, 1130

1 (9th Cir. 2004) (citing <u>Resnick v. Hayes</u>, 213 F.3d 443, 449 (9th Cir. 2000) and <u>Barnett v. Centoni</u>, 31
2 F.3d 813, 815-16 (9th Cir. 1994)); <u>see</u> <u>also</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997).
3 Defendants argue there is no genuine issue of material fact concerning element five, that Defendants
4 were undisputedly advancing a legitimate correctional goal. (Doc. No. 126 P. & A. at 3.)

5       Plaintiff has never addressed element five in his submissions to the Court. In evaluating
6 Defendants' Motion to Dismiss, Judge Lorenz found that "[a]lthough Plaintiff does not specifically
7 allege Defendants' actions did not advance legitimate penological goals, construing the pleading in the
8 light most favorable to Plaintiff, it may be inferred that Defendants' actions were not intended to
9 advance legitimate penological goals." (Doc. No. 51 at 7.) However, Plaintiff has since failed to color
10 in the areas of his claim Judge Lorenz previously inferred. This omission has left unanswered the
11 following questions: (1) Why was the random cell search on July 18, 2004 different from legitimate cell
12 searches made on previous occasions? (<u>See</u> Doc. No. 126 ex. A at 9.) (2) Why was the cell search not a
13 good faith effort to find contraband? (3) And why, when Plaintiff refused to leave his cell, was physical
14 force an illegitimate response?

15       On the other hand, both Defendants Sambrano and Alvarado have provided the Court sworn
16 declarations stating that the search was conducted as part of a routine random cell search for contraband
17 and to ensure the safety and security of the institution. (Doc. No. 126 Sambrano Decl. ¶ 12; <u>id.</u>
18 Alvarado Decl. ¶ 12.) In a third declaration, Robert G. Borg, an expert in California Department of
19 Corrections ("CDC") procedures and policies, notes that random cell searches are an integral part of
20 maintaining security and safety in the prison, and are performed to control contraband and discover
21 escape risks. Borg continues, Plaintiff's request to speak with a supervising officer [was] not a valid
22 basis for Plaintiff's refusal to exit the cell and "[should] not [have] delay[ed] the cell search as it could
23 [have] give[n] Plaintiff time to dispose of contraband he [did] not want found and he [could] talk to a
24 supervisor following the cell search. Additionally, cells are searched continuously and stopping to call a
25 supervisor prior to all cell searches would be onerous and a threat to security." (Doc. No. 126 Borg
26 Decl. ¶ 33)(hereinafter "Borg Decl.".) On Defendants use of force, Borg states that it was reasonable to
27 "gain compliance with a lawful order." (Borg Decl. ¶ 39.) Borg's declaration is persuasive; he boasts
28 authoritative credentials, (Borg. Decl. ¶ 1), and his positions comport with common sense.

Based on the above, Defendants have successfully demonstrated there is not a genuine issue as to whether the search of Plaintiff's cell and his subsequent removal by force[2] served legitimate correctional goals – based on the record, they did. As Defendants have properly supported their motion, it falls to Plaintiff to rebut their assertions with supported facts. Anderson, 477 U.S. at 256. Plaintiff, however, has not offered the Court much. His filings are replete with bare allegations, stating the "actions by the Defendants was [sic] done under [sic] retaliation," but with few details. (FAC at 3; see Doc. No. 128 P. & A. at 4; Doc. No. 130 P. & A. at 2.) In his complaint, Plaintiff states Sambrano was retaliating against him "for have [sic] made verbal reports of this officer [sic] misconduct of aggression." (FAC at 3.) The exact form this "misconduct of aggression" took is never recounted. Plaintiff further explains that he refused to leave his cell because he "could no longer put up with [Sambrano's behavior]." (Id.)

Plaintiff's Opposition to the current motion, in contrast, supplies an alternate explanation of events. Plaintiff accuses Sambrano of searching his cell and confiscating property without properly reporting all the seized items on the search-receipt, an itemized list of confiscated property given to inmates after a cell search. (Doc. No. 130 P. & A. at 5-6.) In a search immediately preceding the one at issue, Plaintiff contends Sambrano threatened to take his television the next time he inspected Plaintiff's cell. (Id.) Presumably, Plaintiff understood Sambrano to imply, that if he removed Plaintiff's television, he would not report the taking. (See id.) Plaintiff continues, stating that the possible unreported loss of his television motivated him to ignore Defendants' orders and demand to speak to their supervisor. (Id. at 6.)

That Plaintiff's statements of facts differ does not concern the Court as much as the lack of the support for either version. Plaintiff has not provided the Court with depositions, answers to interrogatories, admissions on file, or affidavits. Plaintiff has provided allegations and denials, the very offerings that courts on summary judgment are forewarned against considering. See Richards, 602 F.Supp. at 1244-45. Plaintiff has also filed two declarations. (Doc. No. 130.) The first continues the cursory allegations of his complaint. (Id. Jimenez Decl. in opp'n. ) The second serves as a table of contents for his exhibits. (Id. Jimenez Decl. in support of exs.) Even if Plaintiff's more useful

---

[2]Whether force should have been used is a different question than whether the force used was excessive. The former is a point of focus in this section, the latter is addressed in section V.

1 complaint and motion filings were considered as declarations, as just discussed, their substance is thin
2 and only tangentially related to element five.  The Court cannot make the same inferences on behalf of
3 Plaintiff that Judge Lorenz made on the Motion to Dismiss.  Rather, on a motion for summary judgment,
4 the Court may only make reasonable inferences from supported facts.  See Richards, 602 F.Supp. at
5 1244-45.  Here, Plaintiff's facts are unsupported.  Instead, we have the situation described in Scott: two
6 different stories, but only one is overwhelmingly backed by the record.  See Scott, 127 S.Ct. at 1776.
7 Accordingly, Plaintiff's claim of retaliation should be dismissed.

### V.  EXCESSIVE FORCE

When prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, as are Defendants, the question turns on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992).  In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 7.

The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. Id. at 9.  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from the constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries).

Here, Defendants present evidence that Plaintiff, inebriated on "pruno," (Doc. No. 126 ex. B at 20-21), refused to follow their repeated orders to "cuff up" and exit his cell. (Sambrano Decl.¶ 4-5; Alvarado Decl. ¶ 4-5.)  Instead, Plaintiff spit at them, (Doc. No. 126 Ex. B at 20-21), adopted a fighting stance, and threw an electric kettle at Sambrano. (Sambrano Decl.¶ 5-8; Alvarado Decl. ¶ 5-8.)

Defendants attempted to restrain Plaintiff with OC Spray. (Sambrano Decl.¶ 6-7; Alvarado Decl. ¶ 6-7.) Plaintiff, however, continued to defy Defendants prolonging the acrimony. Defendants preceded to use physical force to manacle Plaintiff and remove him from his cell. (Sambrano Decl.¶ 8-9; Alvarado Decl. ¶ 8-9.) Defendants swear they used minimal force and solely to ensure their safety and the prison's security.(Sambrano Decl.¶ 10-11; Alvarado Decl. ¶ 10-11.)

Of course, this depiction of events is disputed. (See FAC; Doc. No. 130.) Defendants' own exhibits provide some support for Plaintiff's allegations. While Plaintiff admits he refused to allow himself to be handcuffed or leave the cell, (Doc. No. 126 ex. A at 6-7; id. ex. B at 25), there is evidence that he respectfully requested to speak with Defendants' supervisor. (Id. ex. A at 7, 9; id. ex. B at 20-21, 25.) Defendants subsequently turned abusive, without warning squirting Plaintiff with OC Spray and beating him with batons. (Id. ex. A at 7; id. ex. B at 20-21.) Defendants' proffered evidence supports the propositions that Plaintiff was not drunk, (See id. ex. A at 8; but see ex. B at 20-21.), did not resist Defendants or throw an electric kettle; he did hold up his arms, but only as a reflex to soften the baton blows to his body. (Id. ex. B at 20-21; see id. ex. A at 7.) Further, there is evidence Defendants beat Plaintiff while he was prone on the ground. (Id. ex. B at 26-27.) Plaintiff has also accused Defendants of striking him while handcuffed. (Doc. No. 130 P. & A. at 2.)

Defendants' and Plaintiff's discordant accounts leave genuine issues of material facts that only a jury can resolve. The Court is mindful that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. And physical force was clearly warranted to remove the disobedient Plaintiff from his cell. However, an inmate who passively refuses to follow orders should be subject to different force than a violent inmate throwing electric tea kettles. In other words, questions concerning Hudson factors (2) through (4) cannot be answered on summary judgment. See id. at 7. Material facts such as whether Defendant was unruly or hit while lying helpless or handcuffed must be determined first. Accordingly, Defendants have failed to show an absence of evidence[3] to support Plaintiff's claims. See Anderson, 477 U.S. at 256. A genuine issue of material facts remains.

---

[3] Granted the evidence supporting Plaintiff is his own self-serving statements, but the scuffle occurred when only Plaintiff and Defendants were present. Defendants in an attempt to prove their assertions have offered the same sort of evidence, declarations by Defendants with their own self-serving statements. The Court is not saying Plaintiff's evidence is convincing, only that it is enough to create a genuine issue of material fact. Fed.R.Civ.P. 56(c)

1  Defendants' motion should be DENIED as to Plaintiff's claims of excessive force.  See Fed.R.Civ.P.
2  56(c).

### VI.  QUALIFIED IMMUNITY

Defendants urge that they are entitled to qualified immunity.  Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A determination as to an official's entitlement to qualified immunity involves a two-pronged inquiry. First, do the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Second, if the plaintiff has alleged a deprivation of a constitutional right, was that right clearly established?  Saucier, 533 U.S. at 201; Sorrels, 290 F.3d at 969. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.  This inquiry is wholly objective; the defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant. Sorrels, 290 F.3d at 970.

As the retaliation claim should be dismissed, the Court will only consider qualified immunity from the excessive force claims.  As just discussed in section V, Plaintiff alleges Defendants pummeled him while he was defenseless on the ground and while handcuffed. (FAC at 3; Doc. No. 130 P. & A. at 2.)  If true, undisputably Defendants would have overreacted to any reasonably perceived threat from a passive Plaintiff (Hudson factor three) and failed to temper the severity of their response (Hudson factor four), using an unreasonable amount of force to what was required (Hudson factor two). Hudson, 503 U.S. at 7.  In short, Plaintiff has alleged facts that Defendant violated his Eighth Amendment rights.  See Saucier v. Katz, 533 U.S. at 201.

Next the Court must determine whether it would be clear to a reasonable officer that Defendants conduct was unlawful in the situation they confronted. Saucier, 533 U.S. at 202.  However, Defendants' conduct and the situation they confronted are material facts in dispute.  See supra § V.  As described above, Defendants have provided evidence of one scenario, a scenario in which they would be entitled

to qualified immunity, but Defendants' exhibits have provided evidence of Plaintiff's version of events. Id. In Plaintiff's version, there can be little doubt that Plaintiff's right to be free from excessive force was clearly established and that the "contours of the right [were] sufficiently clear that reasonable official[s] would understand that what [they were] doing [was unlawful]." Saucier, 533 U.S. at 202. While the Court finds Plaintiff's evidence underwhelming, he has provided enough to prevent Defendants' from carrying their burden on summary judgment. See supra § V. As the facts at issue must be determined at trial, the Court has no choice but to hold that Defendants are not entitled to qualified immunity.

## VII. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Lastly, Plaintiff has made a Motion for Judgment as a Matter of Law. (Doc. No. 128.) As the case has not gone to trial, the Court construes Plaintiff's motion as a Motion for Summary Judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52. The standard remains the same, the Plaintiff must demonstrate that there is "no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If Plaintiff shows an absence of evidence to support Defendants' claims, the burden shifts to Defendants to "set forth specific facts showing that there is a genuine issue for trial ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Here, Plaintiff recycles his Opposition to the Motion for Summary Judgment, rewriting only the first three pages with unhelpful, conclusory statements. (Doc. No. 128; compare Doc. No. 130.) His arguments lack specifics and support. Plaintiff's own declaration proclaims, "there are genuine issues of material fact to be resolved in trial by jury." (Doc. No. 128 Decl. Jimenez)(emphasis added.) It will suffice to say, Plaintiff has not carried his burden. Cross-Motions for Summary Judgment must be considered separately, each motion on its own merits, Fair Housing Council of Riverside County, Inc., v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001); nonetheless, the Court's earlier discussions are informative. Plaintiff has never weighed in, let alone provided evidence, on whether Defendants' action served a legitimate correctional goal, a required element for his retaliation claim. See supra § IV. As to his excessive force claim, even had Plaintiff carried his burden, Defendants have declarations and exhibits establishing that material facts are disputed as to what occurred after Defendants ordered

Plaintiff out of his cell.  See supra § V.  Thus, Plaintiff's Motion for Summary Judgment should be DENIED.

### VIII.  CONCLUSION

For all of the foregoing reasons, it is hereby recommended that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING IN PART & DENYING IN PART** Defendants' Motion for Summary Judgment and **DENYING** Plaintiff's Motion for Summary Judgment.

**IT IS ORDERED** that no later than **October 19, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 26, 2007**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: September 20, 2007

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable M. James Lorenz
    All Counsel of Record